IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 03-cv-2259-RPM

PAMELA R. GUMINA,

      Plaintiff,

vs.

CITY OF STERLING, COLORADO,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

The plaintiff Pamela R. Gumina ("Ms. Gumina") is a former employee of the defendant

City of Sterling ("City") who brought this action under 42 U.S.C. § 1983 and Title VII of the

Civil Rights Act of 1964, as amended, asserting claims for hostile work environment, retaliation,

and violations of the First Amendment right to free speech.  The defendant City moves for

summary judgment of dismissal as to all claims.  Viewing the evidence presented, including the

transcripts of the tape-recorded executive sessions submitted, in the light most favorable to Ms.

Gumina as the nonmoving party, there is some support for the following statement of facts.

Ms. Gumina was hired by the City of Sterling on May 10, 1987 as Director of

Community Development.  She became Assistant to the City Manager in 1996 and was

promoted to Assistant City Manager on May 30, 2000.  Since 1996, as part of her job duties,

she attended public meetings, executive sessions, and pre-meetings held by Sterling's City

Council.  Ms. Gumina, and later City Clerk/Director of Finance Deborah Forbes, were generally

the only female employees to attend the City Council's executive sessions and pre-meetings.

Ms. Gumina was employed at-will.

From 1996 forward, statements were made during the executive sessions or pre-meetings

which Ms. Gumina found offensive.  Statements Ms. Gumina identified included Mr. Steger's

July 1996 comment that "the woman has to move faster in order to make it on time to council,"

when he was late for a pre-meeting; Mr. Steger's March 1997 statement about "how do you

know the blind man in a nudist camp? . . . its not hard"; Mr. Gillespie's August 1997 comment

that the difference between a wife and a girlfriend being "about 45 pounds"; Mr. Gillespie's

February 1998 statement about how you turned a fox into an elephant - "marry her"; Mr.

Steger's July 1998 question to council member John Dzurovchin if he was one of the guys taking

Viagra and swallowing it too slow so it made his "neck stiff, " when Mr. Dzurovchin made a

comment about having some soreness in his back; Mr. Steger's January 1999 statement that

"blondes should not get coffee breaks because of the time it takes to retrain them when they get

back to the job"; and a council member's September 2001 comment about a stain on the carpet

where Mr. Gillespie always sat and Mr. Gillespie said he was not responsible.  Other statements

Ms. Gumina identified, but not by date or who said it, included a "woman isn't smart enough," "what do you expect? . . . it's a woman," or "well a woman is involved."

Ms. Gumina spoke to Randall Gustafson, then City Manager, several times over the years about Mr. Steger's and Mr. Gillespie's behavior and Mr. Gustafson asked them to stop but the comments continued. After Mr. Gustafson resigned on January 9, 2002, Ms. Gumina assumed his duties. There was initially some discussion about having the duties of the acting City Manager shared by a three-person committee consisting of Ms. Gumina, Joe Kiolbasa (Public Works Director), and Roy Pack (Police Chief). Ms. Gumina opposed the idea of a three-person committee because she felt someone needed to be at the top that can say "yes" or "no," that raising three people to the top was a bad management tool, and it violated the City Charter. She testified she consulted with the City Attorney, Doug Asmus, who said he did not know if a three-person committee would work. The City Council ultimately decided to have a single individual and chose Mr. Kiolbasa for that position even though Ms. Gumina also applied. Mr. Kiolbasa received a pay raise for his increased duties.

In the Spring of 2002, the City Council started a search for a permanent City Manager. Curtis Long, the City's personnel director, was in charge of coordinating the search with the search committee consisting of City Council members and non-City Council persons. Ms. Gumina applied for the position but the committee unanimously selected Jim Thomas, who was

3

at that time the city manager for Whitefish Bay Village, Wisconsin. Upon the selection of Mr. Thomas, Mr. Kiolbasa returned to his former position with the City.

Mr. Thomas started work on August 5, 2002 and was required to submit a budget to the City Council no later than September 15. Mr. Thomas had already started working on budget issues and concerns before his official start date. Although there is some dispute about exactly what was said, it is undisputed that on August 7, Ms. Gumina told Mr. Thomas that there was a sexual harassment issue that needed to be dealt with. On August 15, Ms. Gumina wrote a memo to Mr. Thomas, in response to his request for her input on which staff members to reduce as part of his budget cuts, basically disputing the approach he wanted to take. On August 16, Mr. Thomas told Ms. Gumina that she would be terminated from employment. Mr. Thomas determined that the City was in a budget crisis, that positions needed to be eliminated including Ms. Gumina's, that Ms. Gumina's duties could be absorbed by him, and that other budget cuts would be necessary. Since the position was eliminated, there has been no administrative attempt to recreate the position of Assistant City Manager and the duties formerly performed by the Assistant City Manager have been assumed by other positions.

By letter dated August 26, Mr. Thomas gave Ms. Gumina notice of his final decision to terminate her position effective September 20, 2002. She was placed on administrative leave immediately. None of the other employee cuts went into effect immediately.

4

Ms. Gumina's last official date of employment was September 20, 2002. Ms. Gumina filed her charge of discrimination with the EEOC on February 3, 2003.

To survive summary judgment on her claim of a hostile work environment, Ms. Gumina "must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create[d] an abusive working environment." *Sandoval v. City of Boulder, Colo.,* 388 F.3d 1312, 1327 (10th Cir. 2004) (internal quotation marks omitted). She must also show that she was targeted for harassment because of her gender. *Id.* Ms. Gumina's claim fails as the evidence presented falls short of demonstrating pervasive or severe harassment based on Ms. Gumina's sex. Her claim is also untimely as the comments identified occurred sporadically over a period of six years, and Ms.Gumina's vague and conclusory testimony such as "this type of behavior" occurred all the time, without more, is insufficient. *See Duncan v. Manager, Dept. of Safety,* 397 F.3d 1300, 1308-1309 (10th Cir. 2005).

To demonstrate a prima facie case of retaliation, Ms. Gumina must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004). The burden then shifts to the employer City to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. If the

employer meets its burden, "the burden shifts back to the employee to provide evidence showing the employer's proffered reason is a pretext for discrimination." *Stover v. Martinez, supra.*

The evidence submitted by Ms. Gumina to support her retaliation claim based on her complaints of sexual harassment to Mr. Gustafson is insufficient because she has failed to establish a causal connection between this protected activity and any adverse action. She has failed to establish when she complained and when Mr. Gustafson spoke to the City Council members. There is insufficient temporal relationship between any complaints and any adverse action to give rise to a fair inference of retaliation. No showing has been made to support a claim of retaliation based on the selection of Mr. Thomas as City Manager instead of Ms. Gumina. Any complaints of sexual harassment to Mr. Thomas on August 7 fail because the City has produced a legitimate, nondiscriminatory reason for the termination of Ms. Gumina's employment as her position was eliminated due to budgetary reasons, that position no longer exists, and the duties of that position have been assumed by employees in other positions. Ms. Gumina has failed to show that this proffered reason is so weak, implausible, contradictory, inconsistent, or incoherent as to be unworthy of belief. *Stover v. Martinez, supra* at 1073.

To prevail on a retaliation claim in the free speech context, the employee must establish:

(1) the speech involved a matter of public concern, (2) the employee's interest in engaging in the speech outweighed the employer's interest in regulating the speech, and (3) the speech was a "substantial motivating factor" behind the employer's decision to take an adverse employment action against the employee.

6

> . . . If the employee establishes these three factors, he [or she] wins unless (4) the
> employer establishes it would have taken the same action in the absence of the
> protected speech.

*Maestas v. Segura,* 416 F.3d 1182, 1187 (10th Cir. 2005) (internal citations omitted).

Ms. Gumina's objections to the statements she found offensive pertained to a personal
dispute and grievance unrelated to the public's interest.  Her objection to the three-person
committee to perform the duties of City Manager before filling the vacancy was made internally
and was an effort to advance her own interest in continuing in the role of acting City Manager and
therefore not an issue of public concern.  Even assuming Ms. Gumina's speech concerning the
"possibility" of an "impending" violation of the City Charter with the temporary use of a three-
person committee was a matter of public concern, Ms. Gumina has not produced sufficient
evidence linking the City's actions to her speech.  Ms. Gumina has produced insufficient
evidence that this speech was the substantial motivating factor in the appointment of Mr.
Kiolbasa instead of her to the temporary position of acting City Manager, or in her termination.
Further, Ms. Gumina spoke against the committee idea presumably sometime in January 2002
after then City Manager Randall Gustafson resigned but the elimination of her position was made
by Mr. Thomas and did not occur until August 2002, with an effective date of September 20,
2002.  *Maestas, supra* at 1189 ("evidence such as a long delay between the employee's speech
and challenged conduct . . . or evidence of intervening events . . . tend to undermine any inference

of retaliatory motive and weaken the causal link").  It is therefore

ORDERED that defendant City of Sterling's motion for summary judgment of dismissal is granted.  The plaintiff's Motion to Modify Protective Order Regarding Initial Review of Tape Recordings and Records is moot.  The clerk will enter a judgment dismissing Ms. Gumina's complaint with an award of costs to the defendant.

DATED: September 28th, 2005

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge